UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - X

ZURAB SAAMISHVILI

     Plaintiff,       Civil Action No. 25-CV-6178

  - against -

               (Cogan, J.)

BRYAN FLANAGAN, Acting Field Office
Director, U.S. Immigration and Customs
Enforcement,
JUDITH ALMODOVAR, Acting Director,
Enforcement and Removal Operations, U.S.
Immigration and Customs Enforcement,
KRISTI NOEM, Secretary of the U.S. Department
of Homeland Security, and
PAMELA BONDI, U.S. Attorney General,

     Respondents.

- - - - - - - - - - - - - - - - - - - - - - - - - - X

## MEMORANDUM OF LAW IN RESPONSE TO ORDER TO SHOW CAUSE WHY A WRIT OF HABEAS CORPUS SHOULD NOT BE ISSUED

           JOSEPH NOCELLA, JR.
           United States Attorney
           Eastern District of New York
           271-A Cadman Plaza East
           Brooklyn, New York 11201

Justin S. Kirschner
Assistant U.S. Attorney
  (Of Counsel)

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................. 1

STATEMENT OF FACTS ....................................................................................................... 2

I.   Statutory And Regulatory Framework.................................................................................. 2

    A.   Before 1996, Aliens Who Sneaked Across the Border Had More Rights And Protections Than Aliens Who Presented At A Port Of Entry ................................................................. 3

    B.   Congress Eliminates The Preferential Treatment For Aliens Who Unlawfully Entered And Mandated Detention Of All "Applicants For Admission" ........................................ 4

II.  Petitioner's Relevant Immigration And Detention History ................................................. 7

    A.   Petitioner Sneaks Across The Southern Border, Is Detained By CBP, And Is Released On His Own Recognizance To Appear For Removal Proceedings .................................... 7

    B.   Petitioner's OREC Is Cancelled, He Is Again Detained, And An Immigration Judge Orders Him Removed ............................................................................................... 9

    C.   ICE Has Never Initiated Transfer Of Petitioner Out Of MDC, Where He Has Had Seven-Day-A-Week Access To Counsel ...................................................................... 9

III. This Action............................................................................................................................ 10

ARGUMENT .......................................................................................................................... 11

I.   Petitioner's Detention Is Lawful Under The INA............................................................... 11

    A.   Petitioner Is Lawfully Detained Under Section 1225(b)(2)............................................ 11

        1.   The Text of Section 1225(b)(2) Covers Petitioner ...................................... 11

        2.   Authority From The Supreme Court, District Courts In This Circuit And Elsewhere, And The BIA Confirm That Petitioner Is Covered By Section 1225(b)(2)................ 14

    B.   Petitioner's Argument That He Is Covered By Section 1226 Fails, And Decisions Reaching That Conclusion Are Wrongly Decided ......................................................... 16

    C.   Petitioner Is Not Covered By The Detention Authority In 8 U.S.C. § 1231 Because His Order Of Removal Is Not Final ..................................................................................... 26

II.  Petitioner's Detention Comports With Due Process............................................................. 26

III. The APA Claim Under ICE's Detainee Transfer Guidelines Fails ....................................... 31

    A.   A Habeas Petition Is Not The Proper Vehicle For An APA Claim.................................. 32

B.  Petitioner Lacks Standing ................................................................................................ 33

C.  Petitioner Has Not Alleged A Violation Of ICE Policy 11022.1 .................................... 34

CONCLUSION ................................................................................................................................ 34

ii

**TABLE OF AUTHORITIES**

**Cases**

*Abdel v. United States*, 362 U.S. 217 (1960) ................................................................................ 2

*Ahmed v. Holder*, 624 F.3d 150 (2d Cir. 2010) .......................................................................... 19

*Alonzo v. Noem*, -- F. Supp. 3d --, 2025 WL 3208284 (E.D. Cal. Nov. 17, 2025) ................. 15, 23

*Artiga v. Genalo*, 2025 WL 2829434 (E.D.N.Y. Oct. 5, 2025) ..................................................... 22

*Att'y Gen. of United States v. Wynn*, 104 F.4th 348 (D.C. Cir. 2024) .................................... 12, 21

*Avramenkov v. INS*, 99 F. Supp. 2d 210 (D. Conn. 2000) ........................................................... 31

*Calderon Lopez v. Lyons*, 2025 WL 3683918 (N.D. Tex. Dec. 19, 2025) ................................... 14

*Candido v. Bondi*, 2025 WL 3484932 (W.D.N.Y. Dec. 4, 2025) .................................................. 14

*Carlson v. Landon*, 342 U.S. 524 (1952) .................................................................................... 30

*Carter v. HealthPort Technologies, LLC*, 822 F.3d 47 (2d Cir. 2016) ......................................... 34

*Chen v. Almodovar*, 2025 WL 3484855 (S.D.N.Y. Dec. 4, 2025) ....................................... passim

*Chen v. Almodovar*, Case No. 25-3169 (2d Cir.) ........................................................................ 14

*City of New York v. Shalala*, 34 F.3d 1161 (2d Cir. 1994) .......................................................... 19

*Coppola v. United States*, 938 F. Supp. 204 (S.D.N.Y. 1996) ..................................................... 19

*Coronado v. Sec'y, DHS*, 2025 WL 3628229 (S.D. Ohio Dec. 15, 2025) .................................... 15

*Cruz Rodriguez v. Olson*, 2025 WL 3672856 (N.D. Ill. Dec. 17, 2025) ...................................... 15

*Cruz v. Noem*, 2025 WL 3482630 (C.D. Cal. Dec. 2, 2025) ........................................................ 15

*Cty. of Sacramento v. Lewis*, 523 U.S. 833 (1998) ...................................................................... 30

*D.A.V.V. v. Warden, Irwin County Detention Center*, No. 20-cv-159, 2020 WL 13240240 (M.D. Ga. Dec. 7, 2020) ..................................................................................................................... 29

*Da Cunha v. Freden*, 2025 WL 3280575 (W.D.N.Y. Nov. 25, 2025) .......................................... 14

*Da Cunha v. Freden*, Case No. 25-3141 (2d Cir.) ....................................................................... 14

*Demore v. Kim*, 538 U.S. 510 (2003) ...................................................................................... 3, 30

*DHS v. Thuraissigiam*, 591 U.S. 103 (2020) ..................................................................... 27, 28, 29

*Diallo v. Maldonado*, 2025 WL 3158295 (E.D.N.Y. Nov. 12, 2025) ........................................... 22

*Encino Motorcars, LLC v. Navarro*, 579 U.S. 211 (2016) ....................................................... 16

*Fernandez Arevalo v. Bondi*, 130 F.4th 325 (2d Cir. 2025) ........................................................ 15

*Garcia v. U.S. Attn'y Gen.*, 2025 WL 3537592 (M.D. Fla. Dec. 10, 2025) .............................. 15

*Garibay-Robledo v. Noem*, 2025 WL 3264482 (N.D. Tex. Oct. 24, 2025) ................................. 15

*Goe v. Zucker*, 43 F.4th 19 (2d Cir. 2022) ....................................................................... 30

*Good Samaritan Hosp. v. Shalala*, 508 U.S. 402 (1993) ....................................................... 16, 19

*Guerrero v. Noem*, 2025 WL 3214787 (E.D.N.Y. Nov. 18, 2025) ............................................. 22

*Guerrier v. Garland*, 18 F.4th 304 (9th Cir. 2021) ................................................................ 28

*Gutierrez Sosa v. Holt*, 2026 WL 36344 (W.D. Okl. Jan. 6, 2026) ............................................ 14

*Heckler v. Cmty. Health Servs. Of Crawford Cty., Inc.*, 467 U.S. 51 (1984) .............................. 19

*Heikkila v. Barber*, 345 U.S. 229 (1953) ....................................................................... 32

*Hing Sum v. Holder*, 602 F.3d 1092 (9th Cir. 2010) ......................................................... 3, 4, 18

*Hyppolite v. Noem*, 2025 WL 2829511 (E.D.N.Y. Oct. 6, 2025) ............................................. 22

*J.U. v. Maldonado*, 2025 WL 2772765 (E.D.N.Y. Sept. 29, 2025) ........................................... 22

*Jeannot v. New York State*, 762 F. Supp. 3d 217 (E.D.N.Y. 2025) ........................................... 34

*Jennings v. Rodriguez*, 583 U.S. 281 (2018) ...................................................... passim

*Jimenez v. Thompson*, 2025 WL 3265493 (S.D. Tex. Nov. 24, 2025) ........................................ 15

*Kaplan v. Tod*, 267 U.S. 228 (1925) ................................................................................ 28

*Kleber v. CareFusion Corp.*, 914 F.3d 480 (7th Cir. 2019) ................................................... 12, 21

*Landon v. Plasencia*, 459 U.S. 21 (1982) ....................................................................... 28

*Liang v. Almodovar*, 2025 WL 3641512 (S.D.N.Y. Dec. 15, 2025) ........................................... 14

*Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 591 U.S. 657 (2020) ....... 13

*Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024) ................................................. 16

*Lopez Benitez v. Francis*, 2025 WL 2371588 (S.D.N.Y. Aug. 13, 2025) ................................... 20

iv

*Lopez Santos v. Noem*, 2025 WL 2642278 (W.D. La. Sept. 11, 2025) ........................................ 17

*Lujan v. Defs. Of Wildlife*, 504 U.S. 555 (1992) ................................................................. 33

*Martinez v. Att'y General of U.S.*, 693 F.3d 408 (3d Cir. 2012) ........................................ 4

*Mathews v. Eldridge,* 424 U.S. 319 (1976) .................................................................... 26

*Matter of Lemus-Losa*, 25 I & N. Dec. 734 (BIA 2012) ........................................ 12, 21, 22

*Mejia Olalde v. Noem*, 2025 WL 3131942 (E.D. Mo. Nov. 10, 2025) ................................ 25

*Melgar v. Bondi*, 2025 WL 3496721 (D. Neb. Dec. 5, 2025) ........................................ 15

*Mendez Ramirez v. Decker*, 612 F. Supp. 3d. 200 (S.D.N.Y. 2020) ................................ 29

*Montoya v. Holt*, 2025 WL 3733302 (W.D. Okla. Dec. 26, 2025) ................................ 14, 24

*O.F.B. v. Maldonado*, --- F. Supp. 3d. ---, 2025 WL 3277677 (E.D.N.Y. Nov. 25, 2025) .......... 22

*Olalde v. Noem*, 2025 WL 3131942 (E.D. Mo. Nov. 10, 2025) ................................ 15, 23

*Oliveira v. Patterson*, 2025 WL 3095972 (W.D. La. Nov. 4, 2025) ................................ 15

*Ortega-Cervantes v. Gonzalez*, 501 F.3d 1111 (9th Cir. 2007) ................................ 18

*P. B. v. Bergami*, 2025 WL 3632752 (N.D. Tex. Dec. 13, 2025) ................................ 15

*Parra v. Secretary, Department of Homeland* Security, 2026 WL 21243 (M.D. Fl. Jan. 5, 2026) ............................................................. 14

*Poonjani v. Shanahan*, 319 F. Supp. 3d 644 (S.D.N.Y. 2018) ................................ 29

*Poonjani v. Shanahan*, 319 F. Supp. 3d 644, (S.D.N.Y. 2018) ................................ 29

*Rafeedie v. INS*, 880 F.2d 506 (D.C. Cir. 1989) ................................................ 30

*Rivera Hernandez v. Noem*, 2025 WL 3754434 (E.D. Tex. Dec. 19, 2025) ................ 14

*Rodriguez v. Jeffreys*, 2025 WL 3754411 (D. Neb. Dec. 29, 2025) ........................ 14

*Rodriguez v. Noem*, 2025 WL 3639440 (E.D. Tex. Dec. 10, 2025) ........................ 15

*Rodriguez-Acurio v. Almodovar*, --- F. Supp. 3d ---, 2025 WL 3314420 (E.D.N.Y. Nov. 28, 2025) ................................................................. 22, 23

*Rodriguez-Figueroa v. Barr*, 442 F. Supp. 3d 549 (W.D.N.Y. 2020) ........................ 19

*Rojas-Hayes v. INS*, 235 F.3d 115 (2d Cir. 2000) ................................................ 19

*Saleh v. Blinken*, 596 F. Supp. 405 (E.D.N.Y. 2022) ................................................................ 31

*Salim v. Tryon*, No. 13-cv-6659, 2014 WL 1664413 (W.D.N.Y. Apr. 25, 2014) ...................... 29

*Sandoval v. Acuna*, 2025 WL 3048926 (W.D. La. Oct. 31, 2025) ............................................. 15

*Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206 (1953) .................................. 27, 28, 31

*Suarez v. Noem*, 2025 WL 3312168 (E.D. Mo. Nov. 28, 2025) .................................................. 15

*Summers v. Earth Island Institute*, 555 U.S. 488 (2009) ........................................................... 33

*Texas Dep't of Hous. & Cmty. Affs. v. Inclusive Communities Project, Inc.*, 576 U.S. 519 (2015) ............................................................................................................................................... 12, 21

*Topal v. Bondi*, 2025 WL 3486894 (W.D. La. Dec. 3, 2025) ................................................ 15, 17

*Torres v. Barr*, 976 F.3d 918 (9th Cir. 2020) (en banc) ........................................................ 4, 18

*Trump v. J.G.G.*, 145 S. Ct. 1003 (2025) .............................................................................. 32, 33

*United States ex rel Accardi v. Shaughnessy*, 347 U.S. 260 (1954) ......................................... 31

*United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537 (1950) .......................................... 27

*Velasco Lopez v. Decker*, 978 F.3d 842 (2d Cir. 2020) ......................................................... 3, 30

*Velez v. Levy*, 401 F.3d 75 (2d Cir. 2005) ................................................................................. 30

*Villarreal v. R.J. Reynolds Tobacco Co.*, 839 F.3d 958 (11th Cir. 2016) ............................. 12, 21

*Weinstein v. Albright*, 261 F.3d 127 (2d. Cir. 2001) ................................................................. 26

*Wong Wing v. United States*, 163 U.S. 228 (1896) .................................................................... 30

*Ye v. Maldonado*, 2025 WL 3521298 (E.D.N.Y. Dec. 8, 2025) ................................................ 22

*Zadvydas v. Davis*, 533 U.S. 678 (2001). ............................................................................. 26, 27

*Zuniga v. Lyons*, -- F. Supp. --, 2025 WL 3755126 (N.D. Tex. Dec. 29, 2025) ......................... 14

**Statutes**

5 U.S.C. § 704 ............................................................................................................................. 33

8 U.S.C. § 1101(a)(13) (1994) ...................................................................................................... 3

8 U.S.C. § 1101(a)(13)(A) ............................................................................................................ 4

8 U.S.C. § 1101(a)(13)(B) ............................................................................................................ 6

8 U.S.C. § 1182(a)(6)(A)(i) ............................................................................................. 8

8 U.S.C. § 1182(a)(6)(C) ................................................................................................ 7

8 U.S.C. § 1182(a)(7)....................................................................................................... 7

8 U.S.C. § 1182(a)(9)(B)(i)(I) ...................................................................................... 22

8 U.S.C. § 1182(a)(9)(B)(i)(II) ..................................................................................... 22

8 U.S.C. § 1182(d)(5) ...................................................................................................... 7

8 U.S.C. § 1182(d)(5)(A) ....................................................................................... passim

8 U.S.C. § 1225(a) (1995) ............................................................................................... 3

8 U.S.C. § 1225(a) (1995) ......................................................................................... 18, 25

8 U.S.C. § 1225(a)(3)........................................................................................... 4, 12, 21

8 U.S.C. § 1225(b) (1995) .......................................................................................... 3, 18

8 U.S.C. § 1225(b)(1) ........................................................................................... 5, 6, 13

8 U.S.C. § 1225(b)(1)(A)(i) ........................................................................................... 5

8 U.S.C. § 1225(b)(1)(A)(ii) .......................................................................................... 5

8 U.S.C. § 1225(b)(1)(A)(iii)......................................................................................... 5

8 U.S.C. § 1225(b)(1)(B)(ii) ........................................................................................ 13

8 U.S.C. § 1225(b)(1)(B)(iii)(IV) ............................................................................ 5, 13

8 U.S.C. § 1225(b)(2) ............................................................................................ passim

8 U.S.C. § 1225(b)(2)(A)............................................................................. 1, 5, 11, 13

8 U.S.C. § 1225(b)(2)(B) .......................................................................................... 6, 25

8 U.S.C. § 1225(b)(2)(C) ............................................................................................... 6

8 U.S.C. § 1226(a) (1995)............................................................................................... 3

8 U.S.C. § 1226(a)(1)..................................................................................................... 18

8 U.S.C. § 1226(a)(2)..................................................................................................... 18

8 U.S.C. § 1226(c) ............................................................................................... 7, 23, 24

8 U.S.C. § 1226(c)(1) ........................................................................................................ 7, 12

8 U.S.C. § 1226(c)(1)(E)(i) ................................................................................................ 7

8 U.S.C. § 1226(c)(1)(E)(ii) ............................................................................................... 7

8 U.S.C. § 1226(c)(2) ........................................................................................................ 7

8 U.S.C. § 1226(c)(3) ........................................................................................................ 7

8 U.S.C. § 1226(c)(4) .............................................................................................. 7, 23, 24

8 U.S.C. § 1229a ............................................................................................................ 6, 8

8 U.S.C. § 1231(a)(1)(B) (1995) ........................................................................................ 3

8 U.S.C. § 1252(a)(1) (1995) ............................................................................................. 3


Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et. seq.* ........................................ 3, 29

Laken Riley Act ("LRA"), Pub. L. 119-1, 139 Stat. 3 (2025) ................................................... 7, 24

**Other Authorities**

ICE Policy 11022.1 ......................................................................................................... 31, 33, 34

ICE Policy 11022.1, Section 5.2(2) – (3) ................................................................................ 32

Memorandum from Rodney S. Scott, U.S. Customs & Border Protection, Detention of Applicants for Admission (July 10, 2025) ............................................................................ 17

**Regulations**

8 C.F.R. § 1.2 .................................................................................................................. 6

8 C.F.R. § 1003.1(g) ......................................................................................................... 17

8 C.F.R. § 1003.19 ........................................................................................................... 18

8 C.F.R. § 1236.1(d)(1) ..................................................................................................... 18

8 C.F.R. § 1241.1 .......................................................................................................... 1, 26

8 C.F.R. § 1241.1(c) ......................................................................................................... 11

8 C.F.R. § 212.5(b) .......................................................................................................... 20

8 C.F.R. § 235.3(b)(1)(ii) ................................................................................................... 6

8 C.F.R. § 235.3(b)(2)(iii) ........................................................................................ 5

8 C.F.R. § 235.3(b)(4)(ii) ......................................................................................... 5

8 C.F.R. § 235.3(c) .................................................................................................. 20

8 C.F.R. § 236.1(c)(8) ............................................................................................. 18

8 C.F.R. § 236.1(d) ................................................................................................. 18

8 C.F.R. § 236.1(d)(1) ............................................................................................. 18

Respondents respectfully submit this memorandum of law in opposition to the Petition for Writ of Habeas Corpus, ECF No. 1 (the "Petitioner" or "Pet."), and in response to this Court's Order to Show Cause, ECF No. 6.

**PRELIMINARY STATEMENT**

In 1996, Congress reformed our immigration laws so that an alien who entered unlawfully and was detained could no longer seek release from detention through a bond hearing. Instead, Congress required that he remain detained until a determination on his removal, unless the Government exercised its discretion to parole the alien. Here, despite that *pro se* Petitioner Zurab Saamishvili entered unlawfully and is detained pursuant to such mandatory detention authority (8 U.S.C. § 1225(b)(2)(A)), he argues his detention is unlawful and seeks release. Releasing Petitioner would ignore Congress's commands and should be denied.

As background, Petitioner entered the United States in 2021, not at a lawful port of entry and without valid entry documents. Shortly after, he was detained, found inadmissible, ordered to appear at removal proceedings, and released due to a lack of detention capacity. Petitioner was re-detained in October 2025, while his removal proceedings were ongoing. During those proceedings, where Petitioner is represented by counsel, he conceded he was inadmissible. Last week, an Immigration Judge ordered Petitioner removed. Petitioner's removal order is not yet administratively final. *See* 8 U.S.C. § 1231(a)(1)(B); 8 C.F.R. § 1241.1.

Petitioner has never been lawfully admitted. He remains an "applicant for admission" as defined by 8 U.S.C. § 1225(a)(1), who, under § 1225(b)(2)(A), has not shown to an immigration officer that he is "clearly and beyond a doubt entitled to be admitted." He therefore must be detained under 8 U.S.C. § 1225(b)(2)(A).

Petitioner claims that his detention is unlawful for three reasons. First, he claims he may be detained only under 8 U.S.C. § 1226(a) and has been denied the bond hearing available under

1

§ 1226(a) (but not under § 1225). Second, he claims his detention violates his Fifth Amendment Due Process rights, because he has not received a bond hearing. And third, ICE's alleged plan to transfer him from the Metropolitan Detention Center ("MDC") to a detention facility in Louisiana allegedly violates ICE's detainee transfer policy under the doctrine in *United States ex rel Accardi v. Shaughnessy* that agencies must follow their own procedures. As a remedy, he seeks release and an injunction barring his transfer.

Each alleged basis to hold Petitioner's detention unlawful fails. Because Petitioner is an applicant for admission in removal proceedings, § 1225(b)(2)(A) mandates his detention. Holding that Petitioner is detained under § 1226 and therefore entitled to a bond hearing would return immigration law to its pre-1996 state when aliens who surreptitiously entered the country had such protections, thereby ignoring the wholesale changes Congress enacted in 1996. With respect to Due Process, Petitioner has undisputedly received all the process Congress provides for applicants for admission, which is all that the Due Process Clause requires. And concerning the alleged violation of ICE's detainee transfer policy under *Accardi*, a species of an Administrative Procedure Act ("APA") claim, no APA claim may lie in a habeas action, and Petitioner lacks standing, in any event. Even if Petitioner could overcome those barriers and show that no other bar on APA review applies, the evidence shows that transferring Petitioner from MDC to Louisiana has never been initiated. The Petition should therefore be denied.

**STATEMENT OF FACTS**

**I.      STATUTORY AND REGULATORY FRAMEWORK**

For more than a century, Congress has authorized immigration officials to arrest and detain certain aliens subject to removal until their removal proceedings conclude with admission or removal. *See Abdel v. United States*, 362 U.S. 217, 233-34 (1960). Over time, the aliens those laws cover, the scope of the authority to detain, and the avenues for release an alien may pursue have

2

evolved. Throughout, it has remained true that "[d]etention during removal proceedings is a constitutionally valid aspect of the deportation process." *Velasco Lopez v. Decker*, 978 F.3d 842, 848 (2d Cir. 2020) (citing *Demore v. Kim*, 538 U.S. 510, 523 (2003)). As the Supreme Court held in 1896 and affirmed in 2003, "deportation proceedings would be vain if those accused could not be held in custody pending the inquiry." *Demore*, 538 U.S. at 523.

**A.      Before 1996, Aliens Who Snuck Across the Border Had More Rights And Protections Than Aliens Who Presented At A Port Of Entry**

Before 1996, under the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et. seq.*, aliens who attempted to enter the United States by presenting for inspection at a port of entry received less process and were subject to more restrictions than aliens who entered surreptitiously by crossing the border unlawfully. Specifically, under the pre-1996 scheme, aliens at a port of entry who could not demonstrate entitlement to admission were placed in "exclusion proceedings" and were subject to mandatory detention without the possibility of bond. *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216, 223 (BIA 2025); *see* 8 U.S.C. §§ 1225(a) (1995)-(b) (1995), 1226(a) (1995); *see Hing Sum v. Holder*, 602 F.3d 1092, 1099-1100 (9th Cir. 2010) (same). In contrast, an alien who evaded inspection and physically entered the United States was placed in "deportation" proceedings and taken into custody under an arrest warrant, but could request bond. *See* 8 U.S.C. §§ 1231(a)(1)(B), 1252(a)(1) (1995); *Hurtado*, 29 I. & N. Dec. at 223; *Hing Sum*, 602 F.3d at 1100. Thus, whether an alien had physically entered the United States or not – defined at that time as "any coming of an alien into the United States," 8 U.S.C. § 1101(a)(13) (1994) – "dictated what type of [immigration] proceeding applied" and whether the alien would be detained pending those proceedings. *Hing Sum*, 602 F.3d at 1099.

The pre-1996 INA framework had "unintended and undesirable consequence[s]." *Hurtado*, 29 I. & N. Dec. at 223 (emphasis added) (quoting *Martinez v. Att'y General of U.S.*, 693 F.3d 408,

3

413 n.5 (3d Cir. 2012)); *see Hing Sum*, 602 F.3d at 1100 (similar). "[A]liens who entered without inspection could take advantage of the greater procedural and substantive rights afforded in deportation proceedings, including the right to request release on bond, while aliens who had actually presented themselves to authorities for inspection . . . were subject to mandatory custody." *Hurtado*, 29 I. & N. Dec. at 223 (internal quotations omitted).

**B.     Congress Eliminates Preferential Treatment For Aliens Who Unlawfully Entered And Mandates Detention Of All "Applicants For Admission"**

In enacting the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208 § 302, div. C, 110 Stat. 3009-546 (1996), Congress made numerous changes. Specifically, as codified at 8 U.S.C. § 1225(a), "an alien *present* in the United States who has not been admitted . . . shall be deemed for purposes of this chapter an applicant for admission" (emphasis added). Further, Congress defined "admission" with a new modifier: "the *lawful* entry of the alien into the United States after inspection and authorization by an immigration officer."  8 U.S.C. § 1101(a)(13)(A) (emphasis added). Thus, whereas previously the INA had separated aliens who had "enter[ed]" unlawfully from aliens who were being inspected at a port of entry, under IIRIRA, Congress "group[ed] together" as "applicants for admission," who receive "the same treatment," all "arriving aliens (i.e. aliens who have not yet entered) and aliens who are already present in the United States but did not enter lawfully." *See Chen v. Almodovar*, 2025 WL 3484855, at *3 (S.D.N.Y. Dec. 4, 2025). This new categorization fulfilled Congress's goal of "ensur[ing] that all immigrants who have not been lawfully admitted, regardless of their physical presence in the country, are placed on equal footing in removal proceedings under the INA." *Torres v. Barr*, 976 F.3d 918, 928 (9th Cir. 2020) (en banc).

Also codified at § 1225(a)(3), Congress defines "applicants for admission" as a subset of persons "seeking admission." *See* 8 U.S.C. § 1225(a)(3) ("[a]ll aliens  . . . who are applicants for

4

admission *or otherwise* seeking admission . . . shall be inspected by immigration officers"). (emphasis added)

Applicants for admission, in turn, fall into one of two categories, "those covered by § 1225(b)(1) and those covered by § 1225(b)(2)," with detention mandated for both, and the key difference being how fast their removal is effectuated if they are inadmissible. *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018).

Section 1225(b)(1) applies only to applicants for admission who are "arriving in the United States," or have "not been admitted or paroled into the United States," and also, among other aliens, those who have "not affirmatively shown, to the satisfaction of an immigration officer, that the alien has been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility." 8 U.S.C. § 1225(b)(1)(A)(i)-(iii). As to these aliens, IIRIRA created expedited removal proceedings. *DHS v. Thuraissigiam*, 591 U.S. 103, 109-13 (2020). The immigration officer shall "order the alien removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum . . . or a fear of persecution." In that event, the alien "shall be detained pending a final determination of credible fear of persecution and, if found not to have such fear, until removed." 8 U.S.C. § 1225(b)(1)(B)(iii)(IV); *see* 8 C.F.R. § 235.3(b)(4)(ii). An alien processed for expedited removal who does not indicate an intent to apply for asylum or a fear of persecution or who is determined not to have a credible fear is likewise detained until removed. 8 U.S.C. § 1225(b)(1)(A)(i), (B)(iii)(IV); *see* 8 C.F.R. § 235.3(b)(2)(iii).

Section 1225(b)(2) is broader and "serves as a catchall provision that applies to all applicants for admission not covered by § 1225(b)(1)." *Jennings*, 583 U.S. at 287. For them, § 1225(b)(2)(A) requires detention:

> Subject to Subparagraphs B and C in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien *shall be detained* for a proceeding under [8 U.S.C. §] 1229a.

8 U.S.C. § 1225(b)(2)(A) (emphasis added)[1]; *see* 8 C.F.R. § 235.3(b)(1)(ii) (mirroring § 1225(b)(2)'s detention mandate); *Jennings*, 583 U.S. at 302 (§ 1225(b)(2) "mandate[s] detention of aliens throughout the completion of applicable proceedings and not just until the moment those proceedings begin"); *Chen*, 2025 WL3484855, at *3 (detention under § 1225(b)(2)(A) is "mandatory").  During removal proceedings under 8 U.S.C. § 1229a, an alien may seek relief from removal, including asylum.

In sum, § 1225(b)(1) and (2) "unequivocally mandate that aliens falling within their scope 'shall' be detained." *Jennings*, 583 U.S. at 300. And such "detention must continue until immigration officers have finished 'consider[ing]' the application for asylum . . . or until removal proceedings have concluded." *Id.* at 299.

Sections 1225(b)(1) and (2) contain no provision for a bond hearing. The only alternative to detention is parole under 8 U.S.C. § 1182(d)(5)(A), which authorizes (but makes discretionary) parole for "urgent humanitarian reasons or significant public benefit." *Jennings,* 583 U.S. at 288. However, Congress provided that when an alien is granted this discretionary parole, the parolee remains an applicant for admission. 8 U.S.C. § 1182(d)(5)(A) ("[P]arole of such alien shall not be regarded as an admission of the alien."); *accord* 8 U.S.C. § 1101(a)(13)(B); 8 C.F.R. § 1.2.

A neighboring statute, 8 U.S.C. § 1226(c), also provides for mandatory detention during removal proceedings of certain kinds of aliens and lacks this humanitarian parole option.

---

[1] Section 1225(b)(2)(A) does not apply to (1) crewmen or (2) stowaways. 8 U.S.C. § 1225(b)(2)(B). In addition, the Executive has discretion to return aliens who have arrived on land from a contiguous territory to that territory pending removal proceedings. *Id*. § 1225(b)(2)(C).

6

Specifically, 8 U.S.C. § 1226(c), as amended by the Laken Riley Act ("LRA"), Pub. L. 119-1, 139 Stat. 3 (2025), covers aliens with various types of criminal history. *Jennings,* at 287-89.[2] For them, Congress permitted release only if the Department of Homeland Security ("DHS") determines "that release of the alien from custody is necessary" to protect a witness to a "major criminal activity" or similar person, and then only if the alien "will not pose a danger" to public safety and is not a flight risk. 8 U.S.C. § 1226(c)(4); *see Jennings*, 583 U.S. at 289 (quoting then-8 U.S.C.§ 1226(c)(2), now codified as 8 U.S.C. § 1226(c)(4)).

To § 1226(c), the LRA added § 1226(c)(1)(E)(i), (ii), (2) and (3). Under the LRA, an alien who is inadmissible under 8 U.S.C. §§ 1182(a)(6)(C) or 1182(a)(7), and is charged with, arrested for, or convicted of, specified types of crimes, shall be detained by DHS "if not otherwise detained by Federal, State, or local officials." Such an alien is not eligible for humanitarian parole under § 1182(d)(5) and may only be released from custody for the same limited set of reasons set forth in § 1226(c)(4), enumerated above.

## II.    PETITIONER'S RELEVANT IMMIGRATION AND DETENTION HISTORY

The evidence shows that Petitioner has never been lawfully admitted to the United States, he has been in removal proceedings since he was encountered by authorities shortly after he unlawfully entered, and he is now subject to a non-final order of removal.

### A.    Petitioner Sneaks Across The Southern Border, Is Detained By CBP, And Is Released On His Own Recognizance To Appear For Removal Proceedings

On December 28, 2021, Petitioner unlawfully entered the country without inspection and

---

[2]  Section 1226(c) provides that "[t]he Attorney General shall take into custody" certain classes of criminal aliens— those who are inadmissible or deportable because the alien (1) "committed" certain offenses delineated in 8 U.S.C. §§ 1182 and 1227; or (2) engaged in terrorism-related activities. 8 U.S.C. § 1226(c)(1). The Executive must detain these aliens after "the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense." *Id.*

not at a lawful port of entry by crossing the border from Mexico into the United States near San Luis, Arizona. *See* Declaration of Jose F. Caramacho ("ICE Decl.") ¶ 3. The same day, U.S. Customs and Border Protection ("CBP") officers encountered Petitioner and determined that he lacked necessary legal documentation to enter, pass through, or remain in the United States, and that he had not entered at a lawful port of entry. *Id*.; *see* 8 U.S.C. § 1182(a)(6)(A)(i). As a result, Petitioner was arrested and transported to the Yuma Border Patrol Station for further processing. *Id*. Four days later, due to a lack of detention capacity, Petitioner was released on an Order of Release on Recognizance ("OREC"). *Id*. ¶ 4.

On the same day Petitioner was released, CBP issued and personally served Petitioner with a Notice To Appear ("NTA") for removal proceedings under 8 U.S.C. § 1229a, charging him as inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) as an alien present in the United States without being admitted or paroled, or who arrived in the United States at any time or place other than as designated by the Attorney General. *Id*. ¶¶ 4-5. The NTA indicated a hearing date of February 16, 2022, at the Immigration Court at 26 Federal Plaza, New York, New York ("Immigration Court"). *Id*. ¶ 5.

On the hearing date, the Immigration Court deemed the NTA a failure to prosecute because DHS had not yet filed the NTA with the Immigration Court. *Id*. To remedy the failure to prosecute, later in 2022, ICE issued and served by mail to Petitioner a superseding NTA, which indicated a hearing date of January 5, 2023, at the Immigration Court. *Id*. ¶ 6. In October 2022, an attorney located in Brooklyn, New York, Nona Tilley, filed an appearance on behalf of Petitioner with the Immigration Court. *Id*. ¶ 7. Petitioner filed an application for relief from removal the same day. *Id*. The day before the January 5, 2023, hearing, the Immigration Court took the hearing off the calendar and ordered Petitioner to file written pleadings by February 6, 2023. *Id*. ¶ 8. Petitioner

8

filed his pleadings over two months late, on April 21, 2023. *Id.* ¶ 9.

**B.      Petitioner's OREC Is Cancelled, He Is Again Detained, And An Immigration Judge Orders Him Removed**

Later in 2023, Petitioner reported to ICE, as directed, for a check-in, and did so again, as directed, in October 2024 and April 2025. *Id.* ¶¶ 15-17. At the April 2025 check-in, Petitioner was ordered to next report to ICE on October 7, 2025, at 26 Federal Plaza. *Id.* ¶ 15. Petitioner reported as directed and was encountered there by ICE officials. *Id.* ¶ 16. After reviewing Petitioner's information, ICE cancelled Petitioner's OREC and detained him at 26 Federal Plaza for further processing. *Id.* The same day, ICE transferred Petitioner to Delaney Hall Detention Facility in Newark, New Jersey, and three days later, transferred him to MDC in Brooklyn, New York. *Id.* ¶¶ 16-17.

In November 2025, the Immigration Court held four hearings on Petitioner's removal proceedings. *Id.* ¶¶ 10-13. It held multiple hearings to accommodate Petitioner's counsel's schedule and to permit Petitioner to amend his submission requesting relief from removal, in which the Immigration Court identified infirmities. *Id.* At the fourth hearing that month, the Immigration Court accepted Petitioner's revised application for relief from removal and set a merits hearing for December 31, 2025. *Id.* ¶ 13.

Petitioner's removal merits hearing occurred as scheduled, where he was represented by counsel. *Id.* ¶ 14. After the hearing, the Immigration Court ordered Petitioner removed. *Id.* Petitioner has until January 30, 2026, to appeal his removal order. *Id.*

**C.      ICE Has Never Initiated Transfer Of Petitioner Out Of MDC, Where He Has Had Seven-Day-A-Week Access To Counsel**

Petitioner has been detained at MDC since his transfer there on October 10, 2025. *Id.* ¶ 20. ICE has never initiated transfer of Petitioner to any other detention facility. *Id.* At MDC, ICE detainees have access to their legal representatives to prepare for proceedings, both via in-person

visits and through virtual conferencing, the latter of which is available seven days a week. *Id.* ¶ 21. Petitioner and his counsel held one call while Petitioner has been detained at MDC. *Id.* ¶ 21.

## III.    THIS ACTION

Petitioner filed the Petition *pro se* on October 31, 2025. *See* ECF No. 1 ("Petition").[3] He claims that his detention is unlawful on the following grounds. *First*, his detention allegedly violates the INA because detention authority over him is provided in 8 U.S.C. § 1226, not § 1225. *Id.* at 9. *Second*, his detention allegedly violates his procedural due process rights under the Fifth Amendment. *See id.* at 4, 9. *Third*, his detention allegedly violates ICE's "Detainee Transfer Guidelines" because ICE allegedly is "planning" to transfer Petitioner to Louisiana, which he claims is "adversely affecting" his relationship with his attorney. *See id.* at 8-9.[4]

As relief, Petitioner seeks release and the following: an order that ICE "keep [his] detention location where [his] family and [his] attorney are located"; an order that Respondents "file an answer to [his] petition promptly"; "an order allowing [him] to update the petition before the date when the Respondents have to file their answer"; and "an order for the Respondents to show why [he is] not entitled to a bond hearing when [his] arrest is not mandatory." *See* ECF No. 1 at 10.

---

[3] As Petitioner holds himself out to be proceeding *pro se*, Respondents will communicate with Petitioner via mail to MDC, unless otherwise ordered by this Court. Respondents respectfully submit that they have, since their original filings sent to the address on the docket, learned that such address is Petitioner's attorney in his removal proceedings. *See* Docket Sheet & ICE Decl. ¶ 7. Indeed, the address is the address of a law firm. While Respondents have no objection to a *pro se* litigant receiving assistance from whoever he wishes, Respondents cannot communicate with a counsel who has not filed a notice of appearance and is not the guardian ad litem. Respondents respectfully submit that Ms. Tilley be directed to file a Notice of Appearance if she is representing Petitioner.

[4] In passing, Petitioner also appears to claim that his detention violates the INA provision governing detention after a final order of removal has been entered, 8 U.S.C. § 1231, though he is not subject to a final order of removal, *id.* at 8; and violates "equal treatment under the laws," though he offers no allegation how he was unlawfully treated different from similarly situated individuals on the basis of a protected characteristic, *id.* at 4.

## ARGUMENT

### I.   PETITIONER'S DETENTION IS LAWFUL UNDER THE INA

#### A.   Petitioner Is Lawfully Detained Under Section 1225(b)(2)

Petitioner claims his detention violates the INA because, in his view, the governing detention authority is 8 U.S.C. § 1226, not § 1225. *See* Pet. at 9. Petitioner is incorrect.

##### 1.   The Text of Section 1225(b)(2) Shows That Statute Covers Petitioner

Petitioner was encountered and detained after his unlawful entry in December 2021, deemed inadmissible, scheduled for removal proceedings under 8 U.S.C. § 1229a, released on his own recognizance, and recently detained. *See* ICE Decl. ¶¶ 3-4. At his removal proceedings, the Immigration Court ordered Petitioner removed. *Id.* ¶ 14. That order is not administratively final because Petitioner may still appeal until January 30, 2026. *See id.*; 8 C.F.R. § 1241.1(c).

By statute, such undisputed facts make Petitioner an "applicant for admission" because, even though he is present here and was previously released on his own recognizance, he was not and has never been lawfully admitted. *See* 8 U.S.C. § 1225(a)(1); *Thuraissigiam*, 591 U.S. at 109 ("'[A]n alien present in the United States who has not been admitted . . . ' is deemed 'an applicant for admission.'"). Section 1225(b)(2)(A) covers applicants for admission not covered by subsection (b)(1) "if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted." As an alien subject to a non-final order of removal, Petitioner is covered by the detention authority in 8 U.S.C. § 1225(b)(2), as there is no dispute he has not demonstrated to an examining immigration officer that he is "clearly and beyond a doubt entitled to be admitted." *See* 8 U.S.C. § 1225(b)(2)(A); ICE Decl. ¶ 18. Indeed, Petitioner conceded his inadmissibility in his removal proceedings and has since been ordered removed. *See id.* ¶ 9.

Every "applicant for admission" is "seeking admission" and therefore covered by

§ 1225(b)(2)(A). Congress made the fact that "applicant for admission" is a subset of those who are "seeking admission" clear in § 1225(a)(3), which provides that "[a]ll aliens . . . who are applicants for admission *or otherwise* seeking admission or readmission . . . shall be inspected." 8 U.S.C. § 1225(a)(3) (emphasis added). The word "'[o]therwise'" in § 1225(a)(3) "means 'in a different way or manner[.]'" *Texas Dep't of Hous. & Cmty. Affs. v. Inclusive Communities Project, Inc.*, 576 U.S. 519, 535 (2015) (quoting Webster's Third New International Dictionary 1598 (1971)); *see also Att'y Gen. of United States v. Wynn*, 104 F.4th 348, 354 (D.C. Cir. 2024) (same); *Villarreal v. R.J. Reynolds Tobacco Co.*, 839 F.3d 958, 963-64 (11th Cir. 2016) (en banc) ("or otherwise" means "the first action is a subset of the second action"); *Kleber v. CareFusion Corp.*, 914 F.3d 480, 482-83 (7th Cir. 2019). Being an "applicant for admission" is thus a particular "way or manner" of seeking admission, such that any alien who is an "applicant for admission" *is* "seeking admission" for purposes of § 1225(b)(2)(A).

Neither the duration of an alien's unlawful presence in the United States nor his distance from the border alters the legal reality that an "applicant for admission" is "seeking admission." "Congress knows how to limit the scope" of the INA "geographically and temporally when it wants to," but did not in § 1225(b)(2)(A). *Mejia Olalde v. Noem*, No. 1:25-cv-00168, 2025 WL 3131942, at *4 (E.D. Mo. Nov. 10, 2025). By contrasting example, § 1225(b)(1) may apply to aliens "arriving in the United States" or who "ha[ve] been physically present in the United States continuously for [a] 2-year period." 8 U.S.C. § 1225(b)(1). So, "[i]f Congress meant to say" in § 1225(b)(2)(A) "that an alien no longer is 'seeking admission' after some amount of time in the United States, Congress knew how to do so." *Mejia Olalde*, 2025 WL 3131942, at *4. It did not. To the contrary, § 1225(a)(1)'s inclusion of *both* aliens "arriving" and those "present in the United States" confirms that *all* aliens who are not admitted are "applicants for admission," regardless of

12

the length of their presence in the country. 8 U.S.C. § 1225(a)(1).

None of this is to say, however, that "seeking admission" has no meaning beyond "applicant for admission." As § 1225(a)(3) shows, being an "applicant for admission" is only *one* "way or manner" of "seeking admission," not the exclusive way. For example, lawful permanent residents returning to the United States are not "applicants for admission" but they still may be "seeking an admission" in some circumstances. *See* 8 U.S.C. § 1103(a)(13)(C).

"Seeking admission" is "a term of art" that includes not only aliens who "entered the United States with visas or other entry documents before their presence became lawful," but also aliens, like Petitioner, who "entered unlawfully or [were] paroled into the United States but were deemed constructive applicants for admission by operation of [8 U.S.C. § 1225](a)(1)." *Matter of Lemus-Losa*, 25 I. & N. Dec. 734, 743 n.6 (BIA 2012) (emphases omitted). As a result, "many people who are not *actually* requesting to be admitted to the United States in the ordinary sense," as is true for Petitioner, "are nevertheless deemed to be 'seeking admission' under the immigration laws." *Id.* at 743 (emphasis in original).

Thus, for purposes of § 1225(b)(2) and its regulation of "applicants for admission," § 1225 provides that an alien who is an "applicant for admission" is "seeking admission," even if the alien is not engaged in some separate, affirmative act to obtain admission. As an alien covered by § 1225(b)(2), Petitioner "shall be" detained pending completion of his removal proceedings, and he has no access to a bond hearing or any other avenue to secure his release besides DHS's discretionary parole authority, which it has not exercised. *See* 8 U.S.C. § 1225(b)(2)(A). The text of § 1225(b)(2)(A) places Petitioner under its ambit, it mandates detention, and such text is where this Court's "analysis" should "begin[] and end[]." *See Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 591 U.S. 657, 676 (2020).

13

**2.      Authority From The Supreme Court, District Courts In This Circuit And Elsewhere, And The BIA Confirm That Petitioner Is Covered By Section 1225(b)(2)**

Petitioner's detention under § 1225(b)(2)(A) comports with Supreme Court precedent. As *Jennings* explains, applicants for admission are covered either by § 1225(b)(1) or (b)(2). *See* 583 U.S. at 287. Section 1225(b)(1) covers applicants for admission who assert a credible fear of persecution, and it mandates detention. 8 U.S.C. § 1225(b)(1)(B)(ii), (B)(iii)(IV). Section 1225(b)(2) – the provision relevant here – "serves as a catchall provision that applies to all applicants for admission not covered by § 1225(b)(1)." *Jennings*, 583 U.S. at 287. And it mandates detention for them during removal proceedings. *Id*. at 297, 302 ("[Section] 1225(b)(2) . . . mandates[s] detention of aliens throughout the completion of applicable proceedings and not just until the moment those proceedings begin.").[5]

Several courts, including in this Circuit, have confirmed Respondents' reading of § 1225. For example, in *Chen,* 2025 WL 3484855, like here, the alien entered the United States without having been admitted, was released on his own recognizance due to lack of detention capacity, and remained in the country unlawfully for two years. 2025 WL 3484855, at *2. He was later detained pursuant to 8 U.S.C. § 1225(b)(2)(A) while his removal proceedings progress, and he filed a habeas petition. *Id*. The Court rejected the petition, holding that "under the plain language" of § 1225(b)(2)(A), Chen was subject to mandatory detention pending the resolution of his removal proceedings. *Id.* at *4.

---

[5] *Jennings* did not rule on whether non-admitted or inadmissible aliens fell within § 1226(a) as opposed to § 1225(b)(2)(A), which is the issue here. Rather, it held that the duration of detention under either provision is not limited to a six-month time limit, as the Ninth Circuit had held. 583 U.S. at 292, 296-306.  In reaching that holding, *Jennings* summarized § 1226 as applying to aliens "already in the country," 583 U.S. at 289, and elsewhere characterized it as applying to aliens "once inside the United States," *id*. at 288. But such language does not suggest that § 1226 is the *sole* detention authority for *every* "alien[] already in the country," as *Jennings* also refers to § 1226(a) as covering only aliens "present in the country" who are removable under 8 U.S.C. § 1227(a) – which is a provision that applies *only* to previously admitted aliens. *See* 583 U.S. at 288. The latter characterization of which individuals § 1226(a) covers hews closest to the text of the statute and is consistent with Respondents' argument.

Like Petitioner here, Chen argued that he could be lawfully detained only under § 1226(a). But *Chen* held that "[t]here is no support in statutory text, precedent, or legislative history for the conclusion that Section 1225(b)(2) does not apply to aliens who are 'already here' after having illegally entered the country." *Id.* at \*5-\*7; *accord*, *e.g.*, *Candido v. Bondi*, 2025 WL 3484932 at \*2  (W.D.N.Y. Dec. 4, 2025) (Sinatra, J.)[6] (detention under 8 U.S.C. § 1225(b)(2)(A) was proper for alien present unlawfully for two decades without having been admitted, and noting that "[t]he fact that more district courts . . . have decided this issue differently from this court is neither binding nor persuasive").[7]

The conclusion that Petitioner is detained under § 1225(b)(2) is bolstered by recent persuasive precedent from the BIA, which is the highest administrative body for interpreting and applying the INA. In *Matter of Yajure Hurtado*, the BIA held that the INA requires that all applicants for admission, including those who entered the United States without admission or

---

[6] Chen and Candido have appealed to the Second Circuit. *See Chen v. Almodovar*, Case No. 25-3169 (2d Cir.); *Candido v. Bondi*, Case No. 25-3159 (2d Cir.). The Government has likewise appealed to the Second Circuit the adverse ruling on the same issue in *Da Cunha v. Freden*, 2025 WL 3280575 (W.D.N.Y. Nov. 25, 2025). *See Da Cunha v. Freden*, Case No. 25-3141 (2d Cir.).

[7] *Accord Liang v. Almodovar*, 2025 WL 3641512 (S.D.N.Y. Dec. 15, 2025) (Vyskocil, J.); *see also Gutierrez Sosa v. Holt*, 2026 WL 36344 (W.D. Okl. Jan. 6, 2026) (Wyrick, J.); *Parra v. Secretary, Department of Homeland* Security, 2026 WL 21243 (M.D. Fl. Jan. 5, 2026) (Dudek, J.); *Rodriguez v. Jeffreys*, 2025 WL 3754411 (D. Neb. Dec. 29, 2025) (Buescher, J.); *Zuniga v. Lyons*, -- F. Supp. --, 2025 WL 3755126 (N.D. Tex. Dec. 29, 2025) (Hendrix, J.); *Montoya v. Holt*, 2025 WL 3733302 (W.D. Okla. Dec. 26, 2025) (Dishman, J.); *A.M. v. Joyce*, 2025 WL 3706922 (D. Me. Dec. 22, 2025) (Walker, J.); *Calderon Lopez v. Lyons*, 2025 WL 3683918 (N.D. Tex. Dec. 19, 2025) (Hendrix, J.); *Rivera Hernandez v. Noem*, 2025 WL 3754434 (E.D. Tex. Dec. 19, 2025) (Truncale, J.); *E.R.J.B. v. Wofford*, 2025 WL 3683118 (E.D. Cal. Dec. 18, 2025) (Shubb, J.); *Cruz Rodriguez v. Olson*, 2025 WL 3672856 (N.D. Ill. Dec. 17, 2025) (Pacold, J.); *Padilla v. Galovich*, 2025 WL 3640960 (W.D. Wis. Dec. 16, 2025) (Peterson, J.); *Coronado v. Sec'y, DHS*, 2025 WL 3628229 (S.D. Ohio Dec. 15, 2025) (Cole, J.); *P. B. v. Bergami*, 2025 WL 3632752 (N.D. Tex. Dec. 13, 2025) (O'Connor, J.); *Garcia v. U.S. Att'y Gen.*, 2025 WL 3537592 (M.D. Fla. Dec. 10, 2025) (Dudek, J.); *Rodriguez v. Noem*, 2025 WL 3639440 (E.D. Tex. Dec. 10, 2025) (Truncale, J.); *Ugarte-Arenas v. Olson*, 2025 WL 3514451 (E.D. Wis. Dec. 8, 2025) (Griesbach, J.); *Melgar v. Bondi*, 2025 WL 3496721 (D. Neb. Dec. 5, 2025) (Buescher, J.); *Topal v. Bondi*, 2025 WL 3486894 (W.D. La. Dec. 3, 2025) (Doughty, J.); *Cruz v. Noem*, 2025 WL 3482630 (C.D. Cal. Dec. 2, 2025) (Blumenfeld Jr., J.); *Suarez v. Noem*, 2025 WL 3312168 (E.D. Mo. Nov. 28, 2025) (Divine, J.); *Jimenez v. Thompson*, 2025 WL 3265493 (S.D. Tex. Nov. 24, 2025) (Eskridge, J.); *Alonzo v. Noem*, -- F. Supp. 3d --, 2025 WL 3208284 (E.D. Cal. Nov. 17, 2025) (Shubb, J.); *Mejia Olalde v. Noem*, 2025 WL 3131942 (E.D. Mo. Nov. 10, 2025) (Divine, J.); *Oliveira v. Patterson*, 2025 WL 3095972 (W.D. La. Nov. 4, 2025) (Joseph, J.); *Sandoval v. Acuna*, 2025 WL 3048926 (W.D. La. Oct. 31, 2025) (Joseph, J.); *Garibay-Robledo v. Noem*, 2025 WL 3264482 (N.D. Tex. Oct. 24, 2025) (Hendrix, J.); *Chavez v. Noem*, 2025 WL 2730228 (S.D. Cal. Sept. 24, 2025) (Bencivengo, J.).

15

inspection and resided here for years without lawful status, be detained under § 1225 for the duration of their removal proceedings. Specifically:

> Aliens . . . who surreptitiously cross into the United States remain applicants for admission until and unless they are lawfully inspected and admitted by an immigration officer. Remaining in the United States for a lengthy period of time following entry without inspection, by itself, does not constitute an "admission." *See* INA § 101(a)(13)(A), 8 U.S.C. § 1101(a)(13)(A) (2018) (defining "admission").

*Id.* at 228. The BIA found that, because that alien was subject to mandatory detention, he was "ineligible for a bond hearing." *Id.* at 225.

*Matter of Yajure Hurtado* is consistent with the plain language of the relevant statutes, their legislative history, Supreme Court precedent, and District Court precedent in this Circuit and elsewhere, as discussed above. *See Fernandez Arevalo v. Bondi*, 130 F.4th 325, 335-36 (2d Cir. 2025) (construing an INA statute in the same manner as a BIA decision that was consistent with Article III case law, notwithstanding *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 385-86, 401 (2024)). Like the aliens in the foregoing cases, Petitioner is subject to mandatory detention under 8 U.S.C. § 1225.

> **B.      Petitioner's Argument That He Is Covered By Section 1226 Fails, And Decisions Reaching That Conclusion Ignore Congress's Mandate**

Petitioner argues that his detention is "not mandatory" and that he is "entitled to a bond hearing," which the Court may reasonably construe as an argument that he is covered by 8 U.S.C. § 1226, not § 1225(b). Pet. at 10. In support, he argues that "the BIA and the courts have disagreed with [*Hurtado*'s] reasoning for decades," so those prior holdings must govern. *See* Pet. at 9.

At the threshold, Petitioner's premise that prior agency interpretations of IIRIRA are unchangeable and must govern is wrong. DHS may change its interpretation of IIRIRA, provided that it offers a reasoned basis for doing so. *See, e.g.*, *Encino Motorcars, LLC v. Navarro*, 579 U.S.

211, 221 (2016) ("Agencies are free to change their existing policies as long as they provide a reasoned explanation for the change."); *Chen*, 2025 WL 3484855, at *7 & n.1 (citing, *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 392 (2024)) ("failure by the Executive Branch to enforce a statutory provision, or its conclusion that the law does not apply, does not nullify a duly-enacted law").

Here, it is true that, until 2025, the BIA had not issued a precedential opinion on the appropriate detention authority for such individuals. In the absence of binding BIA precedent, DHS and most immigration judges treated detained aliens who previously entered the United States without admission as subject to discretionary detention under 8 U.S.C. § 1226(a), rather than mandatory detention under 8 U.S.C. § 1225(b)(2). *See Hurtado*, 29 I. & N. Dec. at 225 n.6.

In July 2025, DHS began globally applying the reading of § 1225(b)(2) discussed *supra* at Part I.A on detention and availability of release for applicants for admission and issued interim guidance that brought the Executive's detention practices in line with § 1225's text. *See e.g.,* Memorandum from Rodney S. Scott, U.S. Customs & Border Protection, Detention of Applicants for Admission (July 10, 2025).[8] Specifically, DHS concluded that all aliens who enter the country without being admitted are "subject to detention under INA § 235(b) [8 U.S.C. § 1225(b)] and may not be released from DHS, United States Immigration and Customs Enforcement ("ICE")[,] custody except by INA § 212(d)(5) parole." *Id.* Thus, "[f]or custody purposes, these aliens are now treated in the same manner that 'arriving aliens' have historically been treated." *Id.* As a result, the "only aliens eligible for a custody determination and release on recognizance, bond, or other conditions under [8 U.S.C. § 1226(a)] are aliens admitted to the United States and chargeable with deportability under INA § 237 [8 U.S.C. § 1227]." *Id.* As *Chen* held, this change was consistent

---

[8] https://www.cbp.gov/sites/default/files/2025-09/intc-46100_-_c1_signed_memo_-_07.10.2025.pdf.

with the Executive Branch's "broad discretion to make enforcement decisions in 'the immigration context.'" *See* 2025 WL 3484855 at *7.

The BIA recently affirmed DHS's position in the precedential decision *Matter of Hurtado*, concluding that § 1225(b)(2)'s mandatory detention regime applies to all aliens who entered the United States without inspection.[9] *See* 29 I. & N. Dec. at 228. Notably, one district court judge who rejected Respondents' position prior to being made aware of *Hurtado* decided, in light of *Hurtado*, that Respondents' position is correct. *Topal*, 2025 WL 3486894, at *1-2 and n.11 (noting prior decision authored by the same judge, *Lopez Santos v. Noem*, 2025 WL 2642278, at *3-5 (W.D. La. Sept. 11, 2025)).[10]

On the merits, Petitioner's argument that he is covered by § 1226(a) and must receive a bond hearing fails. Section 1226(a), in general, covers individuals who, unlike applicants for admission, have already been admitted to the United States, such as those admitted through a work,

---

[9] BIA decisions are binding on ICE. *See* 8 C.F.R. § 1003.1(g) ("Except as Board decisions may be modified or overruled by the Board or the Attorney General, decisions of the Board and decisions of the Attorney General are binding on all officers and employees of DHS or immigration judges in the administration of the immigration laws of the United States.").

[10]  Even if DHS changed its interpretation of a statute or previously issued documents suggesting Petitioner was covered by a different detention authority, it cannot, as a matter of law, be estopped from implementing its new interpretation. *Good Samaritan Hosp. v. Shalala*, 508 U.S. 402, 417 (1993) (agency "not estopped from changing a view [it] believes to have been grounded upon a mistaken legal interpretation and "'[a]n administrative agency is not disqualified from changing its mind'"). And even if *arguendo*, the normal rules of estoppel against the Government applied, they would be unavailing to Petitioner. It is well-settled that the Government may not be estopped on the same terms as any other litigant." *Heckler v. Cmty. Health Servs. Of Crawford Cty., Inc.*, 467 U.S. 51, 60 (1984). The doctrine of equitable estoppel is applied against the Government only "'in the most serious of circumstances' . . . and is applied 'with the utmost caution and restraint.'" *Rojas-Hayes v. INS,* 235 F.3d 115, 126 (2d Cir. 2000) (quotations omitted). "In order to apply such estoppel against the Government, there must be "a showing of 'affirmative misconduct' by the [G]overnment." *Id.* (quotation omitted). A party must establish "*both* that the Government made a misrepresentation upon which the party reasonably and detrimentally relied *and* that the Government engaged in affirmative misconduct.'"). *See Coppola v. United States*, 938 F. Supp. 204, 208 (S.D.N.Y. 1996) (citing *City of New York v. Shalala,* 34 F.3d 1161, 1168 (2d Cir. 1994)). Mere negligence is insufficient to show affirmative misconduct. *Ahmed v. Holder*, 624 F.3d 150, 155 (2d Cir. 2010).

In *Rodriguez-Figueroa v. Barr*, 442 F. Supp. 3d 549 (W.D.N.Y. 2020), the court concluded that the Government could not be estopped from taking the position that Rodriguez-Figueroa, the petitioner, was subject to detention under § 1225(b) simply because the government previously treated him as detained pursuant to § 1226(a). *Id.* at 558-59. The facts of *Rodriguez-Figueroa* are essentially identical to the facts of this case. The result here should be the same.

tourist, student, or other type of visa, but who have overstayed that visa, or have otherwise violated the terms of that visa, or who have been found later not to have been lawfully admitted. For them, detention is generally discretionary. The Attorney General "may" either "continue to detain the arrested alien" or release the alien on bond or conditional parole. 8 U.S.C. § 1226(a)(1)-(2).[11] The alien may seek custody redetermination (a bond hearing) before an immigration judge and can appeal an immigration judge's custody determination to the Board of Immigration Appeals. 8 C.F.R. §§ 236.1(c)(8), (d), 1236.1(d)(1), 1003.19.

Petitioner's reading of the INA that he is covered by § 1226(a) would return immigration law to its pre-IIRIRA construct and ignore the purpose of IIRIRA: to ensure that aliens who enter the country illegally are not treated more favorably than those who seek admission through the proper channels. *See Chavez*, --- F. Supp. 3d ---, 2025 WL 2730228, at *4. Before 1996, the INA incentivized aliens to enter the United States surreptitiously because they had more process and protections (namely, a bond hearing) than aliens "seeking admission" at a port of entry (requiring mandatory detention). *See* 8 U.S.C. § 1225(a)-(b) (1995). Under the pre-IIRIRA regime, Petitioner would have fallen into the category of aliens who could seek bond because he is present here. But through § 1225(a)(1), Congress corrected this "anomaly" to "ensure[] that all immigrants who have not been lawfully admitted, regardless of their physical presence in the country, are placed on equal footing in removal proceedings under the INA." *Torres*, 976 F.3d at 928; *Hing Sum*, 602 F.3d at 1100. Hence, the pivotal factor in determining Petitioner's status after IIRIRA is "whether or not [he] has been lawfully admitted," not whether he physically entered the United States. *Matter of Hurtado*, 29 I. & N. Dec. at 223-24.

As an alien who surreptitiously crossed the border, was apprehended and placed in removal

---

[11] Conditional parole under § 1226(a) is distinct from humanitarian parole under 8 U.S.C. § 1182(d)(5)(A). *See Ortega-Cervantes v. Gonzalez*, 501 F.3d 1111, 1116 (9th Cir. 2007).

proceedings, and is now subject to a non-final order of removal, Petitioner remains an "applicant for admission," so he is not entitled to a bond hearing, as "neither § 1225(b)(1) nor § 1225(b)(2) says anything whatsoever about bond hearings." *Jennings*, 583 U.S. at 297. Instead, for an applicant for admission, Congress provided that "if the examining immigration officer determines that [he] is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under [8 U.S.C. §] 1229a," which is the very removal proceeding where Petitioner unsuccessfully sought relief from removal. 8 U.S.C. § 1225(b)(2)(A); *see* ICE Decl. ¶ 14. The exclusive authority for releasing an applicant for admission such as Petitioner is DHS's discretionary parole authority under 8 U.S.C. § 1182(d)(5)(A), which it has not exercised here. *See Jennings*, 583 U.S. at 298-301; 8 U.S.C. § 1182(d)(5)(A); 8 C.F.R. §§ 212.5(b), 235.3(c).

To be sure, other judges have sided with Petitioner's position, thereby shrinking the ambit of § 1225 and expanding the ambit of § 1226 Congress set, though none are binding on this Court. *Candido*, 2025 WL 3484932 at *2 ("[t]he fact that more district courts . . . have decided this issue differently from this court is neither binding nor persuasive"). At a high level, those judges reasoned that for an alien to be covered by § 1225(b)(2) (instead of § 1226), he must be "seeking admission," as § 1225(b)(2)(A) mandates detention "if the examining immigration officer determines that an alien *seeking admission* is not clearly and beyond a doubt entitled to be admitted." *See* 8 U.S.C. § 1225(b)(2)(A) (emphasis added). Those judges further hold that an element of "seeking admission" is actively "doing something" to obtain lawful status. *See, e.g., Lopez Benitez v. Francis*, 2025 WL 2371588, at *1 (S.D.N.Y. Aug. 13, 2025).

For instance, in *Lopez Benitez*, the district court reasoned: "Someone who enters a movie theater without purchasing a ticket and then proceeds to sit through the first few minutes of a film would not ordinarily then be described as 'seeking admission' to the theater. Rather, that person

20

would be described as already present there." *Id*. at \*7. Analogously, in the view of *Lopez Benitez* and other decisions, aliens who entered surreptitiously and have been present here without taking steps to obtain lawful status are no longer "seeking admission" and thus are not subject to § 1225(b)(2)(A). The only provision that would allow their detention, this reasoning concludes, would be § 1226(a).

The *Lopez Benitez* analogy misses how Congress defined and used "applicant for admission" and "seeking admission" in § 1225. Section 1225(b)(2) requires the detention of "an alien who is an applicant for admission, if the examining immigration officer determines that an alien *seeking admission* is not clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A) (emphasis added). Congress also provided in § 1225(a)(3) that "[a]ll aliens . . . who are applicants for admission *or otherwise* seeking admission or readmission . . . shall be inspected." 8 U.S.C. § 1225(a)(3) (emphasis added). "Applicants for admission" is thus a subset of aliens who are "seeking admission," and no additional affirmative step to qualify as "seeking admission" is necessary. The courts that follow *Lopez Benitez* read the "otherwise" modifier out of § 1225(a)(3), which, as shown above, confirms that "applicant for admission" is a particular "way or manner" of seeking admission, such that any alien who is an "applicant for admission" *is* "seeking admission" for purposes of § 1225(b)(2)(A). *See Texas Dep't of Hous. & Cmty. Affs.*, 576 U.S. at 535; *Att'y Gen. of United States*, 104 F.4th at 354; *Villarreal*, 839 F.3d at 963-64; *Kleber*, 914 F.3d at 482-83.

"[N]othing in the text of Section 1225 or the logic of the immigration system supports a ruling that 'seeking admission' is an *additional requirement* for mandatory detention" for coverage by § 1225. *Chen*, 2025 WL 3484855 at \*5. Such a conclusion would create the "perverse" incentive for an alien present here but not admitted to lay in wait and not "do[] something" towards

21

admission, lest he trigger mandatory detention under § 1225. *Id.* (restricting mandatory detention to those taking active steps to gain admission would "establish a perverse incentive in which an alien becomes subject to harsher treatment only upon actively seeking 'lawful' status"). That, however, "is not the system defined by Section 1225," which, by Congressional design, "groups together for the same treatment aliens arriving at the border and aliens who are present illegally in the United States." *Id.*

The other district court decisions perceiving aliens "seeking admission" and "applicant for admission" as distinct categories are similarly unpersuasive. *See, e.g.*, *Montoya v. Bondi*, 2025 WL 3718694 (E.D.N.Y. Dec. 23, 2025) (Azrack, J.); *Crespo Tacuri v. Genalo*, 2026 WL 35569 (E.D.N.Y. Jan. 6, 2026); *Ye v. Maldonado*, 2025 WL 3521298 (E.D.N.Y. Dec. 8, 2025) (Donnelly, J.); *Rodriguez-Acurio v. Almodovar*, --- F. Supp. 3d ---, 2025 WL 3314420 (E.D.N.Y. Nov. 28, 2025) (Choudhury, J.); *O.F.B. v. Maldonado*, --- F. Supp. 3d. ---, 2025 WL 3277677 (E.D.N.Y. Nov. 25, 2025) (Gonzales, J.); *J.U. v. Maldonado*, 2025 WL 2772765, at *7-8 (E.D.N.Y. Sept. 29, 2025) (Merchant, J.); *Artiga v. Genalo*, 2025 WL 2829434, at *7-8 (E.D.N.Y. Oct. 5, 2025) (Merchant, J.); *Hyppolite v. Noem*, 2025 WL 2829511, at *9 (E.D.N.Y. Oct. 6, 2025) (Morrison, J.); *see also Guerrero v. Noem*, 2025 WL 3214787, at *3-6 (E.D.N.Y. Nov. 18, 2025) (Komitee, J.) (granting only preliminary relief and setting briefing schedule on dismissing the habeas petition).[12] In these cases, the courts incorrectly reasoned that the phrase "seeking admission" in § 1225(b)(2)(A) had to be distinct from the phrase "applicant for admission" used elsewhere in § 1225, otherwise it would be superfluous. But that conclusion ignores the fact that

---

[12] *Diallo v. Maldonado*, 2025 WL 3158295 (E.D.N.Y. Nov. 12, 2025) (Gujarati, J.), is inapposite. That case rejected the Government's argument that detention was mandatory under § 1225, not owing to statutory interpretation, but on the grounds that for those paroled under 8 U.S.C. § 1182(d)(5), notice is required for early termination and, there, petitioner had received no notice. Respondents respectfully note that Diallo had never in fact been granted parole under § 1182(d)(5) and instead had been released on his own recognizance, but that in any event, the case is inapposite factually.

8 U.S.C. § 1225(a)(1) expressly states that "an alien present in the United States who has not been admitted . . . *shall be deemed for purposes of this chapter an applicant for admission*" (emphasis added). Thus, it was Congress that deemed all aliens present in the United States who have not been admitted as "applicants for admission," regardless of whether they are "doing something" to seek admission. *See Chen,* 2025 WL 3484855, at *4-5 (the holdings of district courts in this Circuit that 1225(b) mandatory detention does not apply to aliens who are not seeking admission "fl[y] in the face of defined statutory text"); *Chavez*, 2025 WL 2730228, at *4 (aliens who were present in the United States and have not been admitted are "applicants for admission" subject to mandatory detention under 8 U.S.C. § 1225(b)(2)); *accord Alonzo*, --- F. Supp. 3d ---, 2025 WL 3208284, at *4; *Olaide*, 2025 WL 3131942, at *3.

Some of the foregoing decisions holding § 1226(a) applicable also reason that the Government's interpretation of § 1225(b) renders superfluous the mandatory detention provision of § 1226(c), as amended in the LRA. *See, e.g.*, *Rodriguez-Acurio*, --- F. Supp. 3d ---, 2025 WL 331420. But that, too, is wrong. The mandatory detention provisions of § 1226(c) – which apply only to certain types of aliens, some of whom have criminal histories – differ from the mandatory detention provision of § 1225(b)(2)(A) in at least one important respect: the avenue and governing standards by which the covered alien may be released. An alien detained under § 1226(c) may be released only on grounds set forth in § 1226(c)(4) – *i.e.*, if the release "is necessary to provide protection to a person who is a witness, a potential witness, a person cooperating with an investigation into major criminal activity, or an immediate family member or close associate" of such persons; and if the alien "will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding." By contrast, a person subject to mandatory detention under § 1225(b)(2)(A) may be released on parole under 8 U.S.C. § 1182(d)(5)(A) for

23

"urgent humanitarian reasons or significant public benefit," wholly at the Government's discretion, which is unlike the strict criteria in the release provision relevant to the LRA, § 1226(c)(4). Thus, there is no superfluity between § 1225(b)(2)(A), on the one hand, and § 1226(c) – both before and after it was amended by the LRA – on the other hand. As another district court has recognized, the LRA "simply removed the Attorney General's detention discretion for aliens charged with specific — but not all — crimes." *Chavez*, 2025 WL 2730228, at *5; *accord Valencia*, 2025 WL 3205133, at *4 (E.D. Cal. Nov. 17, 2025); *Rojas*, 2025 WL 3033967, at *9.[13]

At bottom, the decisions holding § 1226(a) applicable to an alien present inside the United States prior to their detention have not addressed a critical issue: "How does a court determine when a present but unadmitted alien is no longer an 'applicant for admission' or 'seeking admission?'" *Montoya*, 2025 WL 3733302, at *2 (W.D. Okla). *Montoya* elaborated:

> Is two years of unadmitted residence long enough? Three? How far must an alien travel from the border? 50 miles? 100? If an alien has been in the interior a short time but resides far away from the border, can the distance make up for a short duration? Or, if an alien lives close to the border but resides in the country for decades, can the time period make up for the short distance?

*Id.* The BIA has asked a similar question: "If [an alien] is not admitted to the United States . . . but he is not 'seeking admission[,]' . . . then what is his legal status?" *See Matter of Hurtado*, 29 I. & N. at 221. As Judge Dishman concluded, courts answering those questions "presage[] . . . judicial gloss" on the statutory text, when "[t]hese important questions sound in the province of an elected Congress rather than an unelected judge". *See Montoya*, 2025 WL 3733302, at *2.

---

[13] District court decisions to the contrary do not take account of the different options for release that the LRA precluded to certain individuals, and are therefore incorrect in identifying the LRA as evidence that the Government's argument was in error. *J.U.*, 2025 WL 2772765, at *7; *Artiga*, 2025 WL 2829434, at *7; *Hyppolite*, 2025 WL 2829511, at *8. Indeed, in *Artiga*, the district judge recognized that parole is a form of "politically sensitive" relief from mandatory detention under § 1225, yet failed to acknowledge that the LRA precluded certain applicants for admission who had been charged with certain crimes from that benefit by making detention mandatory under a statute that did not afford that relief. *See Rojas*, 2025 WL 3033967, at *9 ("Nothing in the LRA suggests any Congressional thoughts concerning [the interpretation of Sections 1225 or 1226].").

Indeed, the decisions aligning with *Lopez Benitez*, *Rodriguez-Acurio*, and others leave those questions unanswered, as there is "no legal authority for the proposition that after some undefined period of time residing in the interior of the United States without lawful status, the INA provides that an applicant for admission is no longer 'seeking admission,' and has somehow converted to a status that renders him or her eligible for a bond hearing under [8 U.S.C. § 1226(a)]." *See Matter of Hurtado*, 29 I. & N. at 221. Neither the duration of an alien's unlawful presence in the United States nor his distance from the border alters the legal reality that an "applicant for admission" is "seeking admission." "Congress knows how to limit the scope" of the INA "geographically and temporally when it wants to." *Mejia Olalde* 2025 WL 3131942, at *4 ; *see* 8 U.S.C. § 1225(b)(1). So, "[i]f Congress meant to say that an alien no longer is 'seeking admission' after some amount of time in the United States, Congress knew how to do so." *Mejia Olalde*, 2025 WL 3131942, at *4. For § 1225, it did not. To the contrary, § 1225(a)(1)'s inclusion of *both* aliens "arriving" and those "present in the United States" confirms that *all* aliens who are not admitted are "applicants for admission," regardless of how long they have been present here and whether they are taking steps towards lawful admission. 8 U.S.C. § 1225(a)(1).

Reading § 1225(b)(2) to mandate detention for any "applicant for admission," such as Petitioner, as *Chen* and other decisions do, accords with the text as enacted by Congress in IIRIRA. Petitioner falls within the statutory definition of "applicant for admission." He was "present in the United States," there is no dispute that he has "not been admitted," and he does not fall within any of the exceptions to § 1225(b)(2)(A). 8 U.S.C. § 1225(a), (b)(2)(B). Moreover, he cannot – and did not – establish that he is "clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A). Therefore, Petitioner "shall be detained for a proceeding under [8 U.S.C. § 1229a]." 8 U.S.C. § 1225(b)(2)(A). And in such proceeding, the Immigration Court ordered him

25

removed after a merits hearing, where he was represented by counsel and unsuccessfully sought relief from removal. *See* ICE Decl. ¶ 14. By contrast, adopting Petitioner's position that § 1225 authorizes mandatory detention for aliens actively seeking admission at ports of entry but not for those who try to evade inspection would contradict Congressional intent and return the law to its pre-1996 state.

### C. Petitioner Is Not Covered By The Detention Authority In 8 U.S.C. § 1231 Because His Order Of Removal Is Not Final

Petitioner also claims his detention violates the 8 U.S.C. § 1231 as construed "under *Zadvydas* [*v. Davis*, 533 U.S. 678 (2001).]" *See* Pet. at 8. *Zadvydas* is inapposite. That case and the statute it concerns, 8 U.S.C. § 1231, apply to aliens subject to an administratively final order of removal. Here, Petitioner is not subject to an administratively final order of removal, so § 1231 does not govern. 8 U.S.C. § 1231(a)(1)(B). Though an immigration judge has ordered Petitioner removed, as that order does not become administratively final until Petitioner's time to appeal elapses on January 30, 2026, or he exhausts his appeal rights. *See* 8 C.F.R. § 1241.1.

## II. PETITIONER'S DETENTION COMPORTS WITH DUE PROCESS

Petitioner claims that his detention violates "the 5th Amendment due process clause." *See* Pet. at 9. This claim fails because for applicants for admission (such as Petitioner), receiving the process statute provides suffices for due process too, and that is what Petitioner has received.

To state a claim for procedural due process, Petitioner must establish: (i) a cognizable liberty or property interest, and (ii) a deprivation of that interest without being afforded the process that is due to the plaintiff. *See Weinstein v. Albright*, 261 F.3d 127, 134 (2d. Cir. 2001) (citing *Mathews v. Eldridge,* 424 U.S. 319, 334 (1976)). The process owed is circumstance-specific. *Id.* ("[D]ue process is flexible and calls for such procedural protections as the particular situation demands."). As explained below, Petitioner does not – because he cannot – point to any statute or

regulation to support process that is due to him that he has not received. Applicants for admission into the United States, like Petitioner, have limited process afforded by Congress. That process includes mandatory detention pending removal and access to parole (not bond). Petitioner has received, and continues to receive, all process due to him.[14]

Because Petitioner is deemed an applicant for admission and thus treated for constitutional purposes as if stopped at the border,[15] he is lawfully detained pursuant to § 1225(b), and neither his procedural nor substantive due process rights have been violated. First, with respect to his procedural due process rights, the Supreme Court has made clear that "[w]hatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned." *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953) (citing *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950)); *Guzman v. Tippy*, 130 F.3d 64, 66 (2d Cir. 1997) (the rights of excluded aliens "are determined by the procedures established by Congress and not by the due process protections of the Fifth Amendment").In *Mezei*, the Supreme Court held that an alien's detention at the border without a hearing to effectuate his exclusion from the United States did not violate due process. *Mezei*, 345 U.S. at 206. "[A]n alien on the threshold of initial entry stands on a different footing." *Id*. For aliens seeking admission, "[w]hatever the procedure authorized by Congress is, it is due process." *Id*. (quoting *Knauff*, 338 U.S. at 544).

More than a century of Supreme Court precedent confirms that applicants for admission are treated differently under the law for due process purposes from other categories of detained aliens. *See, e.g.*, *Zadvydas*, 533 U.S. at 693 ("The distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law.").

---

[14] Petitioner has separately received substantial process before the immigration court in his removal proceedings, including access to counsel, multiple hearings, and an individual merits hearing. *See* ICE Decl. ¶¶ 7-14, 21.

[15] Under the longstanding "entry fiction" doctrine, "aliens who arrive at ports of entry . . . are 'treated' for due process purposes as if stopped at the border." *Thuraissigiam*, 591 U.S. at 139 (2020).

27

In the relevant provisions of the INA, Congress has decided to treat applicants for admission differently by detaining them during ongoing proceedings to effectuate their removal from the United States. Unlike admitted aliens later placed in removal proceedings and detained under § 1226, applicants for admission are "request[ing] a privilege," *Landon v. Plasencia*, 459 U.S. 21, 32 (1982), and therefore "stand[] on a different footing," *Mezei*, 345 U.S. at 212. Their lack of entitlement to a bond hearing thus flows logically from their lack of admission to the United States in the first instance.

The Supreme Court reaffirmed "[its] century-old rule regarding the due process rights of an alien seeking initial entry" in *Thuraissigiam*, 591 U.S. at 139-40. The Court explained, "[w]hen an alien arrives at a port of entry — for example, an international airport — the alien is on U.S. soil, but the alien is not considered to have entered the country." *Thuraissigiam*, 591 U.S. at 139. Stated further, "aliens who arrive at ports of entry — even those paroled elsewhere in the country for years pending removal — are 'treated' for due process purposes 'as if stopped at the border.'" *Id.* (quoting *Mezei*, 345 U.S. at 215). The Court was clear: "the Due Process Clause provides nothing more" than the process in 8 U.S.C. § 1225 that allows an individual to seek protection from removal if he fears return to his home country and to seek parole from the agency. *Id.*

Courts have applied this entry fiction to aliens who have "entered" and who have developed significant ties to this country during this time. *See e.g.*, *Kaplan v. Tod*, 267 U.S. 228, 230 (1925) (a mentally disabled girl paroled into the care of relatives for nine years must be "regarded as stopped at the boundary line" and "had gained no foothold in the United States"); *Mezei,* 345 U.S. at 214–215 (an alien with 25 years' of lawful presence who sought to reenter enjoyed "no additional rights" beyond those granted by "legislative grace"); *see also, e.g.*, *Guerrier v. Garland*, 18 F.4th 304, 313 (9th Cir. 2021) ("In concluding that *Thuraissigiam's* due process rights were

28

not violated, the Supreme Court emphasized that the due process rights of noncitizens who have not 'effected an entry' into the country are coextensive with the statutory rights Congress provides."); *Mendez Ramirez v. Decker*, 612 F. Supp. 3d. 200, 219-21 (S.D.N.Y. 2020) (following *Mezei*, holding constitutional due process rights for alien deemed at threshold of entry extended no further than the process outlined by statute, and concluding that alien previously released from custody but not lawfully admitted was still considered "at the threshold of initial entry" over one year later for immigration purposes such that § 1225 still applied); *Salim v. Tryon*, No. 13-cv-6659, 2014 WL 1664413, *2 (W.D.N.Y. Apr. 25, 2014) ("The Due Process Clause provides an inadmissible alien no procedural protection beyond the procedure explicitly authorized by Congress, nor any right to be free from detention pending removal proceedings."); *Poonjani v. Shanahan*, 319 F. Supp. 3d 644, 648 (S.D.N.Y. 2018) (holding that petitioner paroled into the United States and continuously present for over 15 years, but not lawfully admitted, was "at the threshold of initial entry" such that "due process amounts to whatever the procedure authorized by Congress is") (cleaned up); *D.A.V.V. v. Warden, Irwin County Detention Center*, No. 20-cv-159, 2020 WL 13240240, at *4-6 (M.D. Ga. Dec. 7, 2020) (concluding that plaintiff was subject to § 1225 notwithstanding her "physical presence . . . in the United States for a lengthy period" and stating that "applying this rule in *Thuraissigiam*, which squares with longstanding Supreme Court precedent, this Court similarly holds that arriving aliens' procedural due process rights entitle them only to the relief provided by the INA" ); *Gonzales Garcia v. Rosen*, 513 F. Supp. 3d 329, 333-36 (W.D.N.Y. 2021) (applying Mezei and Thuraissigiam and holding that an applicant for admission is not entitled to procedural protections beyond those provided by statute).

Here, "because the immigration statutes at issue [ ] do not authorize a bond hearing, *Mezei* dictates that due process does not require one." *Poonjani*, 319 F. Supp. 3d at 649. Other judges

29

have agreed. Given that the constitutional due process rights of applicants for admission are limited to the process that Congress chooses to provide, Petitioner cannot show that he has suffered a procedural due process violation.

Petitioner's detention for the time-limited pendency of his removal proceedings also does not run afoul of his substantive due process rights. A substantive due process claim must allege governmental conduct that 'is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" *Velez v. Levy*, 401 F.3d 75, 93 (2d Cir. 2005) (quoting *Cty. of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998)). Conduct is conscience-shocking only if it was "intended to injure in some way unjustifiable by any government interest." *Lewis*, 523 U.S. at 849. Where no fundamental right is at stake, "governmental regulation need only be reasonably related to a legitimate state objective." *Goe v. Zucker*, 43 F.4th 19, 30 (2d Cir. 2022) (internal quotation omitted).

No court has ever held that an alien not lawfully admitted to the United States holds a fundamental right to remain at liberty in the United States. To the contrary, "Detention during removal proceedings is a constitutionally valid aspect of the deportation process." *Velasco Lopez*, 978 F.3d at 848 (citing *Demore*, 538 U.S. at 523); *see Demore*, 538 U.S. at 523 n.7 ("prior to 1907 there was no provision permitting bail for *any* aliens during the pendency of their deportation proceedings"). That is because "an applicant for initial entry has no constitutionally cognizable liberty interest in being permitted to enter the United States." *Rafeedie v. INS*, 880 F.2d 506, 520 (D.C. Cir. 1989). Removal proceedings "'would be [in] vain if those accused could not be held in custody pending the inquiry into their true character.'" *Demore*, 538 U.S. at 523 (quoting *Wong Wing v. United States*, 163 U.S. 228, 235 (1896)); *see also Carlson v. Landon*, 342 U.S. 524, 538 (1952) ("Detention is necessarily a part of [the] deportation procedure.").

30

Detaining Petitioner is rationally related to the government's interest in enforcing immigration laws. *See Avramenkov v. INS*, 99 F. Supp. 2d 210, 217 (D. Conn. 2000) ("[I]t does not shock the conscience that a certain class of aliens subject to almost certain removal are detained pending removal"). Because Petitioner's detention under 8 U.S.C. § 1225(b)(2)(A) for the duration of his removal proceedings is statutorily mandated, subject only to the possibility of release on discretionary parole by ICE under 8 U.S.C. § 1182(d)(5)(A), *see Jennings*, 583 U.S. at 298-301, Petitioner is not entitled to further process, *see Mezei*, 345 U.S. at 212.[16]

## III.    THE APA CLAIM UNDER ICE'S DETAINEE TRANSFER GUIDELINES FAILS

Last, Petitioner claims his detention is unlawful because "ICE is planning to take [him] out of this Court's jurisdiction to Louisiana," which, in Petitioner's view, violates ICE Policy 11022.1, Detainee Transfers. *See* Pet. at 8-9, 12-25 (attaching ICE Policy 11022.1). Petitioner claims such transfer will "adversely affect[] [his] relationship with [his] local attorney" and his ability to "confer with [his] attorney and to prepare for" his removal proceedings. *Id*. at 8-9. Petitioner argues that ICE allegedly transgressing Policy 11022.1 violates the *Accardi* doctrine that agencies must follow their own procedures, which is a type of claim under the Administrative Procedure Act ("APA"). *See United States ex rel Accardi v. Shaughnessy*, 347 U.S. 260 (1954); *Saleh v. Blinken*, 596 F. Supp. 405, 419 (E.D.N.Y. 2022) (Kovner, J.) ("*Accardi* generally gives aggrieved parties a cause of action under the APA to bring an agency's conduct into conformity with existing valid regulations.") (internal quotations omitted). As relief, Petitioner requests an order that he "keep [his] detention location where [his] family and [his] attorney are located." *See* ECF No. 1 at 10.

ICE Policy 11022.1 does not prohibit detainee transfers. Rather, it provides guardrails on

---

[16] Petitioner also references "the "US Constitution's guarantees[] of . . . equal treatment under the laws." *See* Pet. at 4. To the extent the Court construes this as a claim under the Equal Protection principles of the Fifth Amendment Due Process Clause, Petitioner makes no allegation he has been treated unlawfully differently on account of a protected trait from other similarly situated individuals, so such claim fails.

31

detainee transfer, none of which was violated here. The only aspect of ICE Policy 11022.1 conceivably implicated by Petitioner's allegations is Section 5.2(1)(b). That provides that "unless a transfer is deemed necessary by a [Field Office Director] . . . ICE Supervisory Immigration Officer(s) . . . will not transfer a detainee when there is documentation to support . . . [that] an attorney of record . . . [is] within the [Area of Responsibility]" where the alien is detained. It further provides that "[b]efore a transfer is made" in such a case, "the transfer must be approved at the Assistant Field Office Director level or higher," and "may be deemed necessary . . . for any" of a list of seven reasons. *See* ICE Policy 11022.1, Section 5.2(2) – (3).

Petitioner's claim that Respondents violated ICE Policy 11022.1 fails for three reasons: a habeas case is not the proper vehicle for an APA claim, Petitioner lacks standing for the prospective injunctive relief he seeks, and Petitioner has not alleged any violation of ICE Policy 11022.1.

### A. A Habeas Petition Is Not The Proper Vehicle For An APA Claim

The APA is not the proper vehicle for Petitioner's claims arising out of his detention. In *Trump v. J.G.G.*, 145 S. Ct. 1003 (2025), in which claims including due process claims were brought under the APA, the INA, various habeas provisions, the Supreme Court held that where the claims for relief, as here, "necessarily imply the invalidity of their confinement," regardless of whether Petitioner requests release from confinement, those claims "fall within the 'core' of the writ of habeas corpus and must be brought in habeas." *See Id.* at 1005. The Supreme Court's holding is consistent with well-established law that habeas is generally the only possible district court vehicle for challenges brought pursuant to immigration statutes. *Id.* (citing *Heikkila v. Barber*, 345 U.S. 229, 234-35 (1953)). All the claims in this suit constitute a core habeas claim— though they fail for the reasons discussed *supra*—and are not cognizable under the APA.

Additionally, by the APA's terms, it is available only for agency action "for which there is

no other adequate remedy in a court." 5 U.S.C. § 704. Thus, Petitioner's APA claims are independently barred by this limitation. As noted by Justice Kavanaugh's concurrence in *J.G.G.*, "[G]iven 5 U.S.C. § 704, which states that claims under the APA are not available when there is another adequate remedy in court, I agree with the Court that habeas corpus, not the APA, is the proper vehicle here." *Id.* at 1007 (Kavanaugh, J. concurring). Here, as in *J.G.G.*, habeas is an "adequate remedy" through which Petitioner can challenge his detention. To the extent that Petitioner wants to challenge a potential transfer, not the detention, then the claim should be severed from the habeas petition, and Respondents should be afforded 60 days to respond as Fed. R. Civ. P. 12(a)(2) requires.

### B.      Petitioner Lacks Standing

Even if this claim were properly brought under the APA, it fails for lack of standing. "[Plaintiff] bears the burden of showing that he has standing for each type of relief sought." *See Summers v. Earth Island Institute*, 555 U.S. 488, 493 (2009). To establish standing, Petitioner must show "the irreducible constitutional minimum" that: (1) he has suffered "an injury in fact – an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical"; (2) the injury is "fairly traceable to the challenged action of the defendant"; and (3) it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *See Lujan v. Defs. Of Wildlife*, 504 U.S. 555, 560-61 (1992) (citations and internal quotation marks omitted).

Petitioner lacks standing because he has not alleged any injury in the form of a violation of ICE Policy 11022.1. Petitioner has never been transferred outside the area where his counsel is, nor has ICE initiated or scheduled any process for transferring Petitioner anywhere outside of Manhattan, New Jersey, or Brooklyn – the only locations where he has been detained. The absence of any injury is fatal to standing to pursue a claim for violating ICE Policy 11022.1.

Additionally, Petitioner lacks standing to request the prospective relief of an order that ICE "keep [his] detention location where [his] family and [his] attorney are located." *See* ECF No. 1 at 10. To have standing to receive such prospective injunctive relief, adequately pleading the injury-in-fact element of standing required Petitioner to "show a likelihood that he will be injured in the future" by a repetition of the alleged intent to transfer him to Louisiana, which means that "there must be a substantial risk that" such transfer "will occur." *See Jeannot v. New York State*, 762 F. Supp. 3d 217, 225 (E.D.N.Y. 2025) (Gonzalez, J.). "[P]ossible future injury" will not suffice. *Id*. Petitioner alleges nothing more than his speculation that ICE is going to transfer him to Louisiana, which does not suffice to plead standing. Respondents' affidavit affirming that no transfer of Petitioner has been initiated makes this a "fact-based" lack of standing motion. *See Carter v. HealthPort Technologies, LLC*, 822 F.3d 47, 57 (2d Cir. 2016). Petitioner could present rebutting "evidence" supporting standing, but Respondents submit that no evidence could carry Petitioner's burden to show a sufficiently imminent transfer.

## C.      Petitioner Has Not Alleged A Violation Of ICE Policy 11022.1

For the same reasons that Petitioner has not alleged the injury-in-fact element of standing, he has not alleged any violation of ICE Policy 11022.1. Again, ICE Policy 11022.1 only provides the process by which a detainee may be transferred outside the area where his attorney is located. *See* ICE Policy 11022.1, Section 5.2(1)(b). It does not ban such transfer. But here, ICE neither initiated nor scheduled any process for transferring Petitioner anywhere outside of Manhattan, New Jersey, or Brooklyn.

## CONCLUSION

For the reasons stated herein, the Petition should be denied.

Dated:      Brooklyn, New York
           January 7, 2026

34

Respectfully submitted,

JOSEPH NOCELLA, JR.
UNITED STATES ATTORNEY
Eastern District of New York
*Attorney for Respondents*
271-A Cadman Plaza East
Brooklyn, New York 11201

By:   */s/ Justin S. Kirschner*
       Justin S. Kirschner
       Assistant United States Attorney
       (718) 254-6884
       Justin.Kirschner@usdoj.gov